## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| **KENNETH K. PALMER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 3:12 CV 828** |
| | ) | |
| **MENARD, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Kenneth Palmer brought this action against Defendant Menard, Inc., incorrectly named in the complaint as "Menards," alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. (DE # 1.) Defendant has now moved to dismiss plaintiff's suit under RULE 12(b)(3) and to compel arbitration, arguing that plaintiff's claims are subject to binding arbitration. (DE #11.) Plaintiff has filed a response to this motion (DE ## 18, 19) and defendant has filed a reply (DE # 20). For the following reasons, that motion is granted.

## I.      Factual Background[1]

Plaintiff worked at one of defendant's retail stores in Mishawaka, Indiana. (DE # 1.) During his employment, plaintiff suffered discrimination due to his race and color. Specifically, plaintiff was called names like "slave" and "boy." *(Id.* at 2-3.) Plaintiff reported these incidents to a supervisor, but no action was taken against the person

---

[1] The factual allegations in plaintiff's pro se complaint are sparse. The court will do its best to accurately summarize plaintiff's allegations, which, for purposes of deciding this motion, the court will accept as true.

who made the statements to plaintiff. (*Id.* at 3.) Plaintiff was also accused of theft, and asked not to return to the store. (*Id.*)

On January 27, 2012, plaintiff signed a document entitled "Employee/Employer Agreement."[2] (*See* DE # 12-2 at 2.) That agreement, which contained provisions regarding issues other than arbitration, stated, in part:

> In consideration of employment, continued employment, promotion or salary increase by Menard, Inc., or any division thereof, and in further consideration of the compensation paid or to be paid to me, I agree as follows:
>  . . .
>
> I agree that all problems, claims and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations Section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration. Problems, claims or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. §§ 1981-1988 . . . Title VII of the Civil Rights Act of 1964 . . . .
>
> These claims shall be resolved by binding arbitration with the American Arbitration Association ("AAA") located at 225 North Michigan Avenue, Suite 252, Chicago, Illinois 60601-7601 under its current version of the National Rules for the Resolution of Employment Disputes. Both Menard, Inc. and I understand that the AAA National Rules for the Resolution of Employment Disputes shall govern the fees in this matter, and that the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court. A copy of the National Rules for the Resolution of Employment Disputes and fee schedule of the American Arbitration Association may be obtained by contacting it at the address above.

(*Id.*)

---

[2] In his response, plaintiff has attached an affidavit in which he states that he signed the arbitration agreement on February 7, 2012, not January 27, 2012. (DE # 19-1.) Plaintiff does not explain how the date January 27, 2012 ended up on the arbitration agreement.

Defendant argues that plaintiff is bound by this agreement and his lawsuit should therefore be dismissed. (DE ## 11, 12.)

## II.     Legal Standard

Defendant has moved to dismiss plaintiff's suit pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(3) asserting that plaintiff's suit should be dismissed because this court is the improper venue for this suit. Because the arbitration agreement in this case calls for arbitration outside of the Northern District of Indiana,[3] RULE 12(b)(3) is the appropriate vehicle for seeking dismissal of plaintiff's suit. *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[W]e have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district."). When ruling on a motion to dismiss for improper venue under RULE 12(b)(3), the court may look to evidence outside of the pleadings. *Id.* at 809-10.

## III.    Analysis

To determine whether dismissal is appropriate in this case, the court must determine if the parties had an enforceable agreement to arbitrate and, if so, whether plaintiff's claims are covered by the agreement. Defendant argues that both of these requirements have been met. (DE # 12.) In response, plaintiff argues that the parties never entered into a valid arbitration agreement. (DE # 19.)

---

[3] The agreement specifically calls for arbitration in Chicago, Illinois. (DE # 12-1 at 2.)

### A. Arbitration Agreement

Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract. *See Faulkenberg,* 637 F.3d at 809. "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1130 (7th Cir. 1997). The required elements to form a valid contract in Indiana are an offer, an acceptance, consideration, and a manifestation of mutual assent. *In re Paternity of M.F.,* 938 N.E.2d 1256, 1259 (Ind. Ct. App. 2010). "Under federal procedural law, the existence of a contract is a mixed question of law and fact that is subject to clear error review." *Winforge, Inc. v. Coachmen Industries, Inc.,* 691 F.3d 856, 868 (7th Cir. 2012).

In its order denying defendant's previous motion to dismiss (DE # 10), the court determined that the parties did have a valid arbitration agreement after finding that all the elements of a valid contract under Indiana law were present.[4] (*Id.* at 6-7.) Before reaching the arguments plaintiff makes in his response brief, the court would like to make note of its analysis on the issue of contract formation from its order denying defendant's previous motion:

> Here, defendant made an offer when it provided plaintiff a copy of the employee/employer agreement, which outlined how any potential disputes would be resolved. Plaintiff accepted that offer by signing the agreement. *See Buschman v. ADS Corp.,* 782 N.E.2d 423, 428 (Ind. Ct. App. 2003) ("Assent to the terms of a contract may be expressed by acts which manifest acceptance."). The agreement is supported by adequate consideration: plaintiff agreed to resolve future disputes by arbitration, and defendant agreed to employ plaintiff (DE # 8-1 at 2) and be bound by the arbitrator's decision. *Ackerman v. Kimball Int'l, Inc.,* 652 N.E.2d 507, 509 (Ind. 1995)

---

[4] Plaintiff did not file a response to defendant's previous motion to dismiss.

4

(promise of continued at-will employment is consideration for a valid contract) (adopting and incorporating *Ackerman v. Kimball Int'l, Inc.*, 634 N.E.2d 778, 781 (Ind. Ct. App. 1994); *see also Chambliss v. Darden Restaurants, Inc.*, No. 1:12–cv–485, 2012 WL 4936400, at *2 (S.D. Ind. Oct. 15, 2012) ("The [dispute resolution contract] is also supported by adequate consideration because both parties agreed to a limitation on the avenues available for dispute resolution; to wit, [plaintiff] agreed to arbitrate future disputes in exchange for continued employment and [defendant] in turn agreed to be bound by the arbitrator's agreement."); *Shimkus v. O'Charley's, Inc.*, No. 1:11–CV–122, 2011 WL 3585996, at *4 (N.D. Ind. Aug. 16, 2011) (arbitration agreement signed as a condition of employment supported by consideration because defendant agreed to employ plaintiff); *Kreimer v. Delta Faucet Co.*, No. IP99-1507, 2000 WL 962817, at *3 (S.D. Ind. June 2, 2000) ("In addition to the continued eligibility for at-will employment, consideration can also be found by way of [defendant's] agreement to be bound by the arbitrator's decision, thereby waiving its right to seek judicial determination of a raised claim."). Finally, by signing the agreement, both parties evidenced their assent to the contract. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("[Plaintiff's] signature . . . objectively demonstrated his assent to the contract."). In sum, the court finds that the parties entered into a valid and enforceable contract.

(DE # 10 at 6-7.)

Keeping that analysis in mind, the court will now address the arguments plaintiff makes in his response brief. First, plaintiff argues that the parties do not have a valid arbitration agreement because the employee that ran plaintiff's new-hire orientation did not explain the documents plaintiff signed (including the employment agreement containing the arbitration clause) and did not give plaintiff an opportunity to read the documents, but instead rushed plaintiff through the entire process. (DE # 19 at 3-4.) In response, defendant has provided evidence indicating that plaintiff's new hire orientation took 3.5 hours, and therefore, was not rushed, as plaintiff contends. (DE # 20-1 at 1.) Additionally, defendant argues that under Indiana law, "a person is

5

presumed to understand and assent to the terms of the contract he signs." (DE # 20 at 2.)

"The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* "In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact for trial, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* (citations and quotations omitted). The question, therefore, is not whether plaintiff's denial of reading the arbitration agreement is sufficient to avoid arbitration, but rather, "whether [plaintiff has] produced sufficient evidence to raise a factual issue concerning whether []he and [defendant] are bound by a contract to arbitrate." *Tinder*, 305 F.3d at 735.

Plaintiff does not contest that he signed the arbitration agreement at issue in this case. (DE # 19 at 2-3.) Plaintiff argues, however, that there was no arbitration agreement between the parties because plaintiff was not given an opportunity to read the new-hire documents (including the employment agreement containing the arbitration provision)

before he signed it and because the employee conducting his new hire orientation did not give plaintiff an explanation of the documents he was signing. (*Id.* at 4.)

The agreement that plaintiff signed explicitly stated: "This document contains a binding arbitration provision which may be enforced by both Menard, Inc. and me. *I have read this entire agreement and I fully understand the limitations which it imposes upon me . . . .*" (DE # 12-1 at 2 (emphasis added).) Additionally, plaintiff had a duty to read the contract that he signed. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1292 (7th Cir. 1989) ("[B]asic contract law establishes a duty to read the contract; it is no defense to say, 'I did not read what I was signing.'"); *see also Clanton v. United Skates of America*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997) ("Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it."). And plaintiff's signature evidenced his assent to the terms of the contract. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("[Plaintiff's] signature . . . objectively demonstrated his assent to the contract."); *see also DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.,* 179 F. Supp. 2d 896, 907 (N.D. Ind. 2001) ("By signing the application, [plaintiff] effectively concedes she had an opportunity to review the [contract], and cannot now avoid its terms."). Thus, plaintiff's contentions that he was not given an opportunity to review the agreement before signing and that the employee running the new-hire program failed to explain

the terms of the agreement are not sufficient to create a genuine issue of material fact on whether a valid arbitration agreement was formed.[5]

Because plaintiff has failed to create a genuine issue of material fact on the issue of the formation of the arbitration agreement, the court concludes, for the same reasons it did in its original order, cited above, that a valid arbitration agreement exists. (*See supra* at pp. 4-5.) Additionally, the court finds that plaintiff's claims are covered by the agreement. In his suit, plaintiff alleges violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. (DE # 1.) The arbitration provision at issue here specifically covers both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. (DE # 12-1 at 2 ("Problems, claims or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. §§ 1981-1988 . . . Title VII of the Civil Rights Act of

---

[5] This result might have been different if plaintiff had presented evidence that the person running the new-hire program had specifically told plaintiff not to read the employment agreement, or that plaintiff asked to read the employment agreement, and the person running the new-hire program denied his request. *See Heller Fin., Inc.*, 883 F.2d at 1292 ("There was no evidence that Heller asked Helmke not to read the lease or otherwise prevented him from doing so.").

1964 . . . .").).[6] Therefore, the parties had a valid arbitration agreement, and that agreement covers plaintiff's current claims.

### B. Plaintiff's Other Arguments

Plaintiff next argues that defendant was under a duty to explain the details of the arbitration provision of the employment agreement because defendant was in a significantly more powerful bargaining position than plaintiff. (DE # 19 at 7-8.) Plaintiff points out that he was a lay person seeking employment, and argues that the disparity in bargaining power resulted in the arbitration agreement not being freely negotiated. (*Id.*) In response, defendant argues that the agreement was not unconscionable, and that plaintiff was free to reject defendant's offer of employment if he disagreed with any of the terms of employment. (DE # 20 at 5.)

To determine whether a contract has been freely negotiated, the court must consider the relative bargaining position of each party. *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind. Ct. App. 1995). "This inquiry is similar to that undertaken by courts to determine whether a contract is unconscionable because of a disparity in bargaining

---

[6] In its previous order denying defendant's motion to dismiss, the court denied the motion, in part, because defendant did not present any evidence that the events underlying plaintiff's claims occurred after plaintiff signed the arbitration agreement. (DE # 10 at 7-8.) The parties dispute the date on which plaintiff was first employed with defendant. Defendant contends that plaintiff's first day of work was January 27, 2012, the date listed on the employment agreement. (DE # 12-2 at 1.) Plaintiff states that he signed the agreement on his first day of work, which he contends was February 7, 2012. (DE # 19-1 at 1-2.) Regardless of which party's version of events is correct, plaintiff signed the agreement on his first day of work, and his claims are therefore covered by the agreement.

power. In such cases, a contract is unconscionable if there exists a great disparity between the parties which leads the weaker party to sign the contract unwillingly or without awareness of its terms." *Id.*

Plaintiff's argument – that unequal bargaining power resulted in the employment agreement being unconscionable and not freely negotiated – is a claim of procedural unconscionability. *DiMizio v. Romo*, 756 N.E.2d 1018, 1024 (Ind. Ct. App. 2001) ("Procedural unconscionability issues arise from irregularities in the bargaining process or from characteristics peculiar to one of the parties."). Any inequality in the bargaining process in this case, however, is insufficient to invalidate the arbitration provision of the employment agreement. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."); *Abbott v. Lexford Apartment Services, Inc.,* IP 01–1243–C, 2002 WL 1800320, at *5 n.2 (S.D. Ind. Aug. 2, 2002) ("If we were to find that no low-level employee can be held to an arbitration agreement due to a supposed disparity in bargaining power between the employer and employee, then most arbitration agreements to resolve employment disputes would be rendered ineffective."); *see also Easterly v. Heritage Christian Schools, Inc..* No. 1:08–cv–1714, 2009 WL 2750099, at *2 n.1 (S.D. Ind. Aug. 26, 2009) ("To the extent that Easterly suggests that the typical unequal bargaining power between employees and employers is a reason to find an arbitration clause unenforceable, this argument has been rejected by the Supreme Court." (citing *Gilmer*)). Additionally,

10

plaintiff has not presented any evidence or argument indicating that he would not have signed the employment agreement absent pressure to do so due to the parties' unequal bargaining positions. *See DeGroff*, 179 F. Supp. 2d at 907. Therefore, plaintiff's argument on this issue fails.[7]

Finally, plaintiff argues that the court should not compel arbitration because he will be unable afford the costs associated with arbitration. (DE # 19 at 5-6.) "'[A] party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs.'" *James*, 417 F.3d at 679 (quoting *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000)); *see also Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 635 (7th Cir. 2011) (same).

---

[7] Additionally, plaintiff's argument that the parties had unequal bargaining power and that no one explained the documents plaintiff signed during the new-hire process to him are attacks on the employment agreement generally, and are not specific to the arbitration clause of the employment agreement. This is not sufficient to invalidate the arbitration provision. *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005) ("[A] court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud." (citations and quotations omitted)); *see also Faulkenberg*, 637 F.3d at 811 ("[Plaintiffs] allege instead that they were tricked into signing the franchise agreement and were otherwise misled during contract negotiations. This general allegation of fraud is not enough to avoid the arbitration clause."); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430-31 (5th Cir. 2004) ("As this court has held, the general assertions that Hill did not read or understand the contractual documents or that East Ford did not explain the documents do not suffice to allege fraud in the making of the arbitration clause, but rather address the formation of the entire contract. [These assertions fail] to undercut the arbitration clause.").

In the affidavit attached to his response to defendant's motion, plaintiff explains that he does not have the resources to pay the filing fee associated with arbitration (DE # 19-1 at 2), and points out that he was allowed to proceed *in forma pauperis* in his federal suit. (DE # 19 at 5-6.) Additionally, plaintiff contends that he would not be able to pay for the costs of the arbitration itself, or the costs of traveling to and from Chicago to arbitrate his claims. (DE # 19-1 at 2.)

In response, defendant points out that the only arbitration fee plaintiff would be responsible for is the initial filing fee, which cannot exceed the cost of a filing fee in federal court, and that all other costs and fees are paid by defendant. (DE # 20 at 6; DE # 20-1 at 4; DE # 20-3 at 1; DE # 20-4 at 19-21.) Additionally, defendant presents evidence that the arbitration rules that would control an arbitration between the parties allow for the party initiating the arbitration to request a hearing locale, and that "it is custom practice for the hearing locale to be the same location where the employee worked or currently resides for the convenience of all parties and its witnesses." (DE # 20-3 at 1; DE # 20-4 at 12.)

Thus, it appears that the only cost or fee that plaintiff would incur in arbitration is the initial filing fee,[8] which cannot exceed the cost of filing a suit in federal court. (DE # 12-1 at 2.) And, while plaintiff states that he is unable to afford paying that filing

---

[8] It is also possible that plaintiff would have to pay a small fee if he causes a hearing to be postponed. (DE # 20-4 at 20.)

fee, he does not put forth any evidence explaining why paying the arbitration filing fee
would be more cost prohibitive than litigating his suit in federal court:

> [T]o invalidate an arbitration agreement based on the costs, there must be specific evidence establishing why arbitration would be prohibitively expensive. . . . [T]hat means [plaintiff] would have to produce some evidence to show . . . why arbitration would be too costly but litigation in the courts would not be. Without this information, the risk that arbitration would be prohibitively expensive is "too speculative to justify the invalidation of an arbitration agreement."

*Baumann,* 421 F. App'x at 635 (quoting *Green Tree,* 531 U.S. at 91).

If this case went to arbitration, plaintiff would end up paying more with regard
to a filing fee than he did in his federal suit because he was granted leave to proceed *in
forma pauperis* in the federal suit. Plaintiff, however, fails to account for other costs
associated with litigating a case in federal court. For example, defendant has presented
evidence that any arbitration would likely be held where plaintiff worked or currently
resides (DE # 20-3 at 1), and therefore, would minimize any travel costs for plaintiff. If,
however, plaintiff's suit were to proceed in federal court, there could be hearings or
even a trial held in Hammond, Indiana. Hammond is only a stone's throw from
Chicago, Illinois, and in his affidavit, plaintiff expressed concerns about being able to
afford the travel expenses associated with arbitrating a claim in Chicago. (DE # 19-1 at
2.)

Beyond his general assertion that he cannot pay the filing fee associated with
arbitration, plaintiff has not presented any evidence indicating that litigating his claims
in federal court would be less expensive than arbitrating his claims. Plaintiff has

therefore not met his burden on this issue, and his argument fails. *Baumann,* 421 F.

App'x at 635; *see also James*, 417 F.3d at 679-80.

**IV.     Conclusion**

For the foregoing reasons, defendant's motion to dismiss is **GRANTED**.

(DE # 11.) The Clerk is directed to dismiss this case without prejudice, and plaintiff is

ordered to submit his claims to arbitration as outlined in the arbitration provision of the

employment agreement.

**SO ORDERED.**

Date: March 4, 2014

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT